**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| INTERMOOR, INC. | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | C.A. No. _____ |
| | § | |
| US WIND, INC. | § | |
|     Defendant. | § | |

**ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE:

InterMoor, Inc. ("Plaintiff" or "InterMoor") files this Original Complaint against Defendant US Wind, Inc. ("US Wind") and would show the Court as follows:

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1333. This is an action for breach of maritime contracts for maritime services.

2. In the alternative, this Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties and InterMoor seeks damages in excess of $75,000, exclusive of interest and costs.

3. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391(b)(2) and (b)(3).

**PARTIES**

4. At all times material hereto, InterMoor was and still is a Delaware corporation, with its principal place of business located at 900 Threadneedle St., Suite 300, Houston, Texas 77079.

5. Defendant US Wind is a Massachusetts corporation, with its principal place of business located at 401 East Pratt Street, Suite 1810, Baltimore, Maryland 21202. US Wind

may be served by serving its registered agent, Kevin R. Brennan, at 131 Dartmouth Street, Suite 501, Boston, Massachusetts 02116.

## FACTS

6.     InterMoor brings this action in order to recover money in excess of $2,000,000 indisputably due and owing to it for services provided in connection with a maritime contract.

7.     US Wind is owned by Renexia S.p.A., an Italian company and a subsidiary of Toto Holding Group. In 2014, US Wind was awarded two leases offshore of Ocean City, Maryland to build an offshore wind farm with a total investment of $2.5 billion (the "Project").

8.     As part of the Project, US Wind signed an agreement with EPIC Applied Technologies ("EPIC") in or around May of 2019 for the installation of a meteorological tower (the "MET Mast Tower") to be used to collect raw wind data. Installation of the MET Mast Tower was scheduled to begin on July 14, 2019, with installation anticipated to be completed by August 8, 2019.[1] EPIC was the prime contractor for the MET Mast Tower portion of the Project and contracted with various subcontractors to provide services, including affiliates of InterMoor.

9.     In July of 2019, US Wind terminated its contract with EPIC due to financial issues of EPIC and the impending bankruptcy filing of EPIC. US Wind then approached InterMoor and requested that it take over EPIC's role as prime contractor, and InterMoor and US Wind entered into a Master Service Agreement dated July 29, 2019 (the "MSA").[2] US Wind further requested that certain subcontractors on the MET Mast Tower portion of the Project be retained by InterMoor when InterMoor took over EPIC's role as prime contractor.

---

[1]     http://www.uswindinc.com/us-wind-moves-ahead-met-mast-tower-plans/
[2]     The MSA is governed by and interpreted in accordance with general maritime law, but if general maritime law is not applicable, the laws of the State of Texas govern.

10. One of those subcontractors was All Coast, LLC ("All Coast"), which had agreed to the charter of the *Great White* lift boat for the installation of the Met Mast foundation and Met Mast Tower at the Project. However, due to US Wind's inability meet certain required insurance pre-requisites, it requested that InterMoor enter into a contract directly with All Coast for the charter of the *Great White*, knowing that InterMoor had no previous relationship with All Coast.

11. Due to poor weather conditions and three named windstorm events, the transit of the *Great White* to the Project location was slowed. InterMoor provided regular email updates to US Wind on the progress of the *Great White* as well as the *force majeure* events that were affecting the progress of the Project. Furthermore, when the *Great White* arrived to the Project site, the vessel's captain determined that the operations required for the Project could not be safely undertaken due to weather conditions, and US Wind was advised of same on September 22, 2019.

12. With the Project already running behind due to EPIC's bankruptcy and the change of prime contractor to InterMoor, US Wind was concerned about further costs and raised questions on September 23, 2019, about the daily standby costs of the *Great White* that it was accruing for the "weather delays."

13. On September 26, 2019, despite acknowledging significant weather related delays, and ignoring terms of the MSA that suspend obligations of a party to the MSA when a party is prevented from performing said obligations due to a *force majeure* event, US Wind, through its attorney, sent notice advising it was terminating the MSA. Specifically, US Wind advised it was terminating the MSA under Section 4.3 thereof because "US Wind believes that InterMoor has negligently supervised the actions of their subcontractor, All Coast, allowing them to unreasonably refuse to perform necessary operations under the MSA." This correspondence also stated that US Wind will suspend all payments while it assesses the

amount of damages it has suffered due to "InterMoor's breach" and further requested that InterMoor not make any further payments to subcontractors.

    14.    Section 4.3 of the MSA states:

> 4.3    **Default Termination** – Notwithstanding the foregoing, in the event [US Wind] believes that [InterMoor] has breached any of the material obligations set forth in this Agreement, [US Wind] shall provide [InterMoor] with written notice setting forth the particulars of the alleged breach. In the event that [InterMoor] shall be considered in default, and [US Wind] may terminate this Agreement or any Work Order by giving [InterMoor] ten (10) days' advance written notice of such termination. In the event [US Wind] terminates this Agreement or any Work Order due to [InterMoor's] default, [InterMoor] shall be entitled to payment as set out in Article 6 for the portion of the Work performed in accordance with this Agreement and the applicable Work Order. Any additional costs reasonably incurred by [US Wind] as a direct result of such termination shall be recoverable from [InterMoor], up to a maximum of twenty-five percent (25%) of the amount that [InterMoor] would have been paid if it had completed the Work.

Were US Wind's September 26, 2019 notice of termination effective, which it is not, it would result in the termination of the MSA on October 6, 2019.

    15.    Upon information and belief, by terminating for the alleged reasons identified in US Wind's attorney's September 26, 2019 correspondence, US Wind improperly sought to invoke favorable termination terms rather than the terms provided in the other termination clause of the MSA, Section 4.2, which states:

> 4.2    **Optional Termination of Work Order** – [US Wind] may, in its sole discretion, terminate any particular Work Order (as defined in Article 5), at any time, upon giving [InterMoor] five (5) days' advance written notice, unless otherwise specified in the applicable Work Order. In the event of such termination, [InterMoor] shall be entitled to payment as set out in Article 6 for the portion of the Work performed in accordance with the Agreement and the applicable Work Order, together with the costs to demobilize [InterMoor's] personnel and equipment, and such other reasonable costs as agreed between the Parties at the time of termination.

    16.    As of September 26, 2019, four separate invoices had been issued by InterMoor to US Wind for work performed in connection with the Project, including charter sought by All Coast, with the total amount of these invoices equaling $1,820,808.78. Per the terms of the

MSA, payment for each of these invoices was due within five (5) days after receipt by US Wind unless US Wind, within the five day period, notified InterMoor of any item in dispute and specified the reason therefor. In the event a portion of the invoice was disputed, timely payment of the undisputed portion of the invoice was still required under the MSA.

17. For each of these four invoices, US Wind did not notify InterMoor of any item in dispute, including any reason to dispute any item with US Wind's invoices, within the five day period. However, despite the lack of any such notification to InterMoor, US Wind has not paid these invoices and refuses to pay the $1,820,808.78 indisputably owed to InterMoor.

18. InterMoor has issued an additional $1,059,090 in invoices to US Wind that have not been paid, and US Wind has indicated no such payment will be made. Finally, InterMoor anticipates it will incur another $2,500,000 million in charter for which US Wind is responsible due its breach of contract.

## CAUSES OF ACTION

### A. BREACH OF CONTRACT

19. Plaintiff repeats and re-alleges each and every allegation contained in all proceedings paragraphs and incorporates those allegations herein.

20. Per the terms of the MSA and pursuant to instructions received from US Wind, InterMoor performed work for which it expected payment under the MSA. To date, US Wind has breached the MSA for failure to make payment as required by the terms of the MSA, and InterMoor has suffered injuries and damages as a result thereof.

21. In addition, US Wind has breached the contract by improperly terminating the MSA under Section 4.3. There was no material breach of the MSA by InterMoor and therefore, US Wind breached the contract by terminating under this provision. InterMoor has suffered injuries and damages as a result thereof.

B. **QUANTUM MERUIT**

22. Plaintiff repeats and re-alleges each and every allegation contained in all proceeding paragraphs and incorporates those allegations herein.

23. Pleading in the alternative, InterMoor has provided valuable services and materials to US Wind at the Project, who accepted the services and materials under such circumstances as would reasonably notify US Wind that InterMoor expected to be paid for such services and materials.

**ATTORNEY'S FEES**

24. As a result of US Wind's breach, and its failure and refusal to pay for the services and materials provided by InterMoor, InterMoor has been forced to retain legal counsel and seeks reimbursement for its reasonable attorney fees. InterMoor seeks its reasonable and necessary attorneys' fees as permitted by Chapter 38 of the Texas Civil & Practice Remedies Code.

**PRAYER FOR RELIEF**

WHEREFORE PREMISES CONSIDERED, InterMoor, Inc. prays that US Wind, Inc. be cited to appear to appear and answer herein and that upon final hearing, InterMoor, Inc. has and recovers judgment of and from the US Wind, Inc., actual damages, including lost profits, consequential damages, exemplary damages, treble damages, costs of Court, pre-judgment and post-judgment interest, attorneys' fees under Chapter 38 of the Texas Civil Practice & Remedies Code, and all other relief, in law and in equity, general or special, to which Plaintiff may be entitled.

Respectfully submitted,
**HOLMAN FENWICK WILLAN USA LLP**

By: */s/ Glenn R. Legge*
**Glenn R. Legge**
**Attorney-in-charge**
TBN: 12171330
glenn.legge@hfw.com
**Cade W. White**
TBN: 24051516
cade.white@hfw.com
5151 San Felipe, Suite 400
Houston, Texas  77056
(713) 917-0888  Telephone
(713) 953-9470  Telefax

**ATTORNEYS FOR PLAINTIFF, INTERMOOR, INC.**