UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| INTERMOOR INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-3823 |
| | § | |
| US WIND, INC., | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM AND ORDER**

Before the Court is Defendant's Motion to Dismiss. (Doc. No. 10). After considering the Motion and all applicable law, the Court determines that Defendant's Motion to Dismiss must be **GRANTED**. Plaintiff's claims are hereby **DISMISSED WITHOUT PREJUDICE** to refile in another forum.

**I.     BACKGROUND**

Defendant US Wind, Inc. is a Massachusetts corporation that develops and operates renewable energy projects, including offshore windfarms. (Doc. No. 10, at 6). Defendant has a principal place of business in Baltimore, Maryland, and is a wholly owned subsidiary of Renexia S.p.A., an Italian company. *Id.* Defendant has no physical presence in Texas. *Id.* at 7.

In 2014, Defendant obtained leases to the Maryland Wind Energy Area, off the coast of Ocean City, Maryland, and began constructing an offshore wind farm there. *Id.* As part of the project, Defendant needed to transport a meteorological tower from New Orleans, Louisiana, to the site of the wind farm, and then install the tower at the wind farm. *Id.* Defendant contracted with various corporations in turn to execute the meteorological tower project. (Doc. No. 12, at 8–9). In 2019, Defendant entered into a prime contract with EPIC Applied Technologies, a Texas entity,

1

which in turn subcontracted with Plaintiff InterMoor Inc. (Doc. No. 10, at 7; Doc. No. 12, at 9). Plaintiff is a corporation formed under the laws of Delaware, with a principal place of business in Houston, Texas. (Doc. No. 1, at 1).

A few months later, Defendant terminated its contract with EPIC Applied Technologies in reaction to EPIC's impending bankruptcy. *Id.* at 2. Plaintiff and Defendant began negotiating a contract for Plaintiff to take over as prime contractor for the meteorological tower project. (Doc. No. 10, at 8). Neither party traveled to the other in negotiating the contract. (Doc. No. 12, at 10). On July 29, 2019, parties signed a Master Service Agreement ("Agreement"). (Doc. No. 10, at 8). Defendant signed the Agreement in Baltimore, Maryland; Plaintiff signed from its office in Houston, Texas. (Doc. No. 10-1, at 3; Doc. No. 12, at 10). Some of Defendant's personnel traveled to Houston for a kick-off meeting one day after the Agreement was signed. (Doc. No. 12, at 12).

While parties were negotiating the Agreement, Plaintiff notified Defendant that Plaintiff's project management services would be provided out of Plaintiff's Houston, Texas office. *Id.* at 10. The text of the Agreement itself does not describe where any work would take place. (Doc. No. 10-1, at 9–30). Rather, the Agreement defines Plaintiff as an independent contractor, which "shall retain and exercise the authority and right to direct and control the manner in which all Work for Client is performed." *Id.* at 13. The Agreement also has a choice-of-law clause, which states that the Agreement is governed by "general maritime law, but if general maritime law is not applicable, the laws of the state of Texas (exclusive of any principles of conflicts of laws which would direct application of the substantive laws of another jurisdiction) shall govern." *Id.* at 25. The Agreement does not include a forum selection clause. (Doc. No. 10, at 8).

Parties also exchanged a supplemental scope-of-work document. (Doc. No. 12-6, at 5–9). The scope-of-work document set out the specifics of the meteorological tower project—the scope

of work, estimated schedule, specifications for installation, and proposed personnel and equipment. *Id.* At no point in the document do the parties mention Texas or set out a specific location for Plaintiff's project management work. *Id.*

Plaintiff began work on the tower transportation and installation. Plaintiff contracted with three Louisiana-based subcontractors, including All Coast, LLC, which owned the *Great White*, the jack up lift boat needed to install the tower. (Doc. No. 10, at 8). The *Great White* left from New Orleans, Louisiana and reached the coastal waters of Maryland after minor delays caused by poor weather. *Id.* at 9. Once at the site of the wind farm, the *Great White*'s captain determined that the weather conditions would not allow safe installation and refused to go forward with the planned installation. (Doc. No. 1, at 3). Despite Defendant's request to Plaintiff that the *Great White* be ordered to proceed with installation, the *Great White* left the wind farm site and traveled to Delaware Bay to wait out the weather, before returning to Louisiana without installing the tower. (Doc. No. 10, at 10).

After the *Great White* left Maryland waters without installing the tower, Defendant sent notice to Plaintiff's Houston office that it was terminating the Agreement because Plaintiff had negligently supervised its subcontractor, such that the subcontractor unreasonably refused to perform as required by the Agreement. (Doc. No. 1, at 3; Doc. No. 10-1, at 43). In the notice, Defendant also stated that it would be suspending all future payments to Plaintiff. *Id.* Prior to termination, Plaintiff's invoices had been issued from its Morgan City, Louisiana office, and payment was routed through either Atlanta, Georgia or New Orleans, Louisiana. (Doc. No. 10, at 10).

Plaintiff filed this lawsuit against Defendant on October 3, 2019, bringing claims of breach of contract and quantum meruit based on Defendant's alleged improper termination of the

Agreement. (Doc. No. 1). Defendant was served on October 16, 2019. (Doc. No. 5). Defendant filed suit in the District of Maryland on October 11, 2019, alleging breach of contract against Plaintiff. (Doc. No. 10, at 5). Now pending before this Court is Defendant's Motion to Dismiss, in which Defendant argues both lack of personal jurisdiction and improper venue. (Doc. No. 10).

## II. **LEGAL STANDARD**

A motion to dismiss filed under Rule 12(b)(2) asserts a lack of personal jurisdiction. A federal court has personal jurisdiction over a nonresident defendant if "(1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (citing *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007)). Because the Texas long-arm statute is coextensive with the Due Process Clause, only the second prong of this inquiry is relevant in the current proceeding. *Id.*

A court may exercise either general or specific personal jurisdiction over a defendant. *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8–9 (1984)). Where a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State," courts have general jurisdiction to "hear any and all claims against" such a defendant. *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). However, specific jurisdiction requires an "affiliation between the forum and the underlying controversy." *Id.* (alteration omitted) (quoting Arthur T. von Mehren & Donald T. Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 HARV. L. REV. 1121, 1136 (1966)).

In order to satisfy constitutional due process requirements for specific jurisdiction, Plaintiff must show: "(1) the defendant purposefully availed himself of the benefits and protections of the

forum state by establishing 'minimum contacts' with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of 'fair play and substantial justice.'" *Moncrief*, 481 F.3d at 311; *see also Int'l Shoe*, 326 U.S. at 316. On a Rule 12(b)(2) motion to dismiss, Plaintiff need only show a prima facie case of the predicate facts; all disputed facts should be construed in favor of Plaintiff. *McFadin*, 587 F.3d at 758.

A motion to dismiss filed under Rule 12(b)(3) argues for dismissal on the basis of improper venue. Venue is generally governed by 28 U.S.C. § 1391. *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). Section 1391 provides that a case may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

### III. ANALYSIS

Plaintiff argues only that this Court has specific jurisdiction over Defendant. (Doc. No. 12, at 16; Doc. No. 13, at 1 n.1). Thus, Plaintiff must first show that Defendant has established minimum contacts with Texas. It is clear and undisputed that Plaintiff has offices in Houston, Texas, as well as offices outside of Texas, while Defendant has no continuous physical presence anywhere in Texas. It is also undisputed that the events surrounding the actual transport and installation of the tower did not physically occur in Texas. Plaintiff, then, relies heavily on a few

5

facts: that Defendant knowingly chose to contract with Plaintiff, an entity with a physical presence in Texas, as well as other entities with physical presences in Texas, and that Defendant requested services that it knew were run out of Plaintiff's Houston offices.

It is well-settled that Defendant's contract with Plaintiff alone is not sufficient to establish minimum contacts in Plaintiff's home forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Rather, the Supreme Court has held that factors related to the formation and substance of the contract—"prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing"—must be considered when determining minimum contacts. *Id.* at 479. Thus, the Court must look at factors outside of Defendant's mere choice to contract with Plaintiff. Here, construing facts in favor of Plaintiff, Defendant did have a few contacts with Texas outside of its contract with Plaintiff: Defendant knew that Plaintiff would be running its management operations out of its Houston office before signing the Agreement, and immediately after signing, personnel employed by Defendant traveled to Houston for a planning meeting. Additionally, the Agreement included a choice-of-law clause that designated Texas law in the event that maritime law does not apply. However, other facts show just how few contacts Defendant actually had with Texas: beyond the initial planning meeting, Defendant was never physically present in Texas, it never directed Plaintiff to act in Texas in any way, and the events that formed the basis for the contract and the alleged breach of contract—transportation and installation of the meteorological tower—all took place outside of Texas.

In arguing that these facts amount to Defendant's purposeful availment of Texas as a forum, Plaintiff relies heavily on two Fifth Circuit cases: *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376 (5th Cir. 2003), and *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003 (5th Cir. 1982). According to Plaintiff, both cases stand for the proposition

that purposeful availment occurs when defendants form business contracts in which it is reasonably foreseeable that activities under that contract would take place in the forum state. *See Cent. Freight*, 322 F.3d at 382 n.6 ("[A] nonresident can establish contact with the forum by taking purposeful and affirmative action, the effect of which is to cause business activity (foreseeable by the defendant) in the forum state."); *Transpo*, 681 F.2d at 1008 ("[Defendant] is considered to have purposefully availed itself of the privilege of conducting activities within the forum if it was reasonably foreseeable that [plaintiff] would in fact perform a material part of its contractual obligations within the forum state."). Because Defendant knew Plaintiff would be running its management operations out of its Houston office, argues Plaintiff, it was thus foreseeable that Plaintiff would be working out of the forum state. Thus, argues Plaintiff, Defendant has purposefully availed itself of Texas through Plaintiff.

Unfortunately for Plaintiff, later Fifth Circuit opinions have clarified and narrowed that language in *Central Freight* and *Transpo*, so Plaintiff's argument is no longer persuasive. In *McFadin v. Gerber*, 587 F.3d 753 (5th Cir. 2009), the Fifth Circuit rejected the plaintiff's argument that, under *Transpo*, the sustained contractual relationship between a resident plaintiff and a nonresident defendant was enough to establish minimum contacts. *Id.* at 761. Rather, the Fifth Circuit held that *Transpo* was decided based on "the hub of the parties' activities," and although the defendant had sold the plaintiff's products to some Texas-based retailers, the purpose of the contract at hand was to sell the plaintiff's products in the Rocky Mountain Region. *Id.*; *see also Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344–45 (5th Cir. 2004) (finding no personal jurisdiction even where defendant contracted with resident plaintiff in long-term business relationship, because contract governed by English law and material portions of contract were performed outside of Texas). Similarly, in *Moncrief Oil International Inc. v. OAO Gazprom*, 481

7

F.3d 309 (5th Cir. 2007), the Fifth Circuit also noted that *Transpo* and *Central Freight* both involved "hubs of activity" within Texas, as well as factors such as a plaintiff that existed only in the forum state, and a defendant that had actively engaged in other activities within the forum state. *Id.* at 313. Thus, the Fifth Circuit found that, although the defendant in *Moncrief* had entered into a contract with the plaintiff knowing that plaintiff was a Texas resident and would be substantially performing terms of the contract in Texas, and even sent an executive to visit Texas in furtherance of that performance, because the defendant did not direct plaintiff, an international company with projects all over the world, to perform in Texas, the defendant did not purposefully avail itself of Texas as a forum. *See id.* at 312, 313; *see also Special Indus., Inc. v. Zamil Grp. Holding Co.*, 578 F. App'x 325, 330–31 (5th Cir. 2014) (finding no personal jurisdiction where contract did not call for any work to be performed by either party in Texas, as foreseeability that work would be performed in Texas was not enough).

The present case is analogous to *Moncrief*. Like the defendant in *Moncrief*, Defendant contracted with Plaintiff knowing that Plaintiff operated partially out of Texas, Defendant allegedly knew that Plaintiff intended to run its management operations out of its Houston offices, and Defendant sent personnel to Plaintiff's Houston office for a planning meeting. However, Plaintiff operates out of multiple states, and Defendant never directed Plaintiff to perform terms of the contract in Texas. In fact, as an independent contractor, Plaintiff retained full control over such decisions. Importantly, unlike *Moncrief*, the terms of the contract were not even to be substantially performed in Texas; even though Plaintiff performed management tasks in Houston, the focus of the contract was the movement and installation of the tower between Louisiana and Maryland, none of which would take place in Texas. Thus, Defendant's actions in deciding to

8

contract with Plaintiff and the actions relating to that contract and its subsequent breach did not form the minimum contacts necessary to create personal jurisdiction.

Plaintiff also relies on two additional facts that distinguish this case from *Moncrief* and similar Fifth Circuit cases. First, Plaintiff notes that the Agreement contained a choice-of-law clause that named Texas law. A choice-of-law clause alone is not enough to establish personal jurisdiction; rather, it is one of many factors to be considered. *Burger King*, 471 U.S. at 481–82; *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 223 (5th Cir. 2012). However, courts appear to weigh a choice-of-law clause as strong evidence of intent to either purposefully avail or not avail oneself of a forum. *See Burger King*, 471 U.S. at 482 (finding that the choice-of-law clause designating the forum state's law as controlling "reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there"); *Moncrief*, 481 F.3d at 313 (noting that Russian arbitration and choice of law clauses suggest intent to keep undertaking within Russian jurisdiction); *Freudensprung*, 379 F.3d at 345 ("The significance of these alleged minimum contacts is severely diminished by the fact that the contract at issue specified that it was to be governed by English law . . . ."). Despite the weight accorded to choice-of-law clauses, however, Plaintiff has not presented enough points of contact outside of the choice-of-law clause between Defendant and the forum to reach minimum contacts. This is especially true as the clause only cites Texas law as secondary—Texas law is invoked only when maritime law does not apply. Thus, the choice-of-law clause in the Agreement is not enough to establish minimum contacts for Defendant.

Second, Plaintiff repeatedly emphasizes that Defendant contracted with multiple other companies that conducted business in Texas for this project, and expected Plaintiff to work with those other contractors. However, because Plaintiff has conceded that this Court does not have

contract with Plaintiff and the actions relating to that contract and its subsequent breach did not form the minimum contacts necessary to create personal jurisdiction.

Plaintiff also relies on two additional facts that distinguish this case from *Moncrief* and similar Fifth Circuit cases. First, Plaintiff notes that the Agreement contained a choice-of-law clause that named Texas law. A choice-of-law clause alone is not enough to establish personal jurisdiction; rather, it is one of many factors to be considered. *Burger King*, 471 U.S. at 481–82; *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 223 (5th Cir. 2012). However, courts appear to weigh a choice-of-law clause as strong evidence of intent to either purposefully avail or not avail oneself of a forum. *See Burger King*, 471 U.S. at 482 (finding that the choice-of-law clause designating the forum state's law as controlling "reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there"); *Moncrief*, 481 F.3d at 313 (noting that Russian arbitration and choice of law clauses suggest intent to keep undertaking within Russian jurisdiction); *Freudensprung*, 379 F.3d at 345 ("The significance of these alleged minimum contacts is severely diminished by the fact that the contract at issue specified that it was to be governed by English law . . . ."). Despite the weight accorded to choice-of-law clauses, however, Plaintiff has not presented enough points of contact outside of the choice-of-law clause between Defendant and the forum to reach minimum contacts. This is especially true as the clause only cites Texas law as secondary—Texas law is invoked only when maritime law does not apply. Thus, the choice-of-law clause in the Agreement is not enough to establish minimum contacts for Defendant.

Second, Plaintiff repeatedly emphasizes that Defendant contracted with multiple other companies that conducted business in Texas for this project, and expected Plaintiff to work with those other contractors. However, because Plaintiff has conceded that this Court does not have

general jurisdiction over Defendant, Defendant's actions that are unrelated to the present claims at issue are not relevant to the specific jurisdiction analysis. The other contractors were not parties to the Agreement between Plaintiff and Defendant. Thus, they are unrelated to the question of whether that contract was breached. The fact that Defendant may have contracted with other Texas-based companies, then, is not relevant to the question of whether this Court has specific jurisdiction over Defendant for the present breach of contract and quantum meruit claims for relief.

In conclusion, Plaintiff has failed to show that Defendant established minimum contacts necessary to be subject to personal jurisdiction in this forum. Because Plaintiff has failed to show minimum contacts, the Court need not reach the fair play and substantial justice prong of the personal jurisdiction analysis. Similarly, because the Court lacks personal jurisdiction in this case, there is no need to decide whether venue is appropriate here.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss. Plaintiff's claims are hereby **DISMISSED WITHOUT PREJUDICE** to refile in a court that has personal jurisdiction over Defendant.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 23rd day of January, 2020.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE